IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

BOBBY SMITH, JR.,                 :
                                  :
      Plaintiff,                  :
                                  :
vs.                               :   CIVIL ACTION 09-0448-CG-M
                                  :
GWENDOLYN GIVENS, et al.,         :
                                  :
      Defendants.                 :

REPORT AND RECOMMENDATION

      Plaintiff, an Alabama prison inmate proceeding pro se and in
forma pauperis filed a Complaint under 42 U.S.C. § 1983.  This
action was referred to the undersigned pursuant to 28 U.S.C. §
636(b)(1)(B) and Local Rule 72.2(c)(4) and is now before the
undersigned on Defendants' Motion for Summary Judgment (Docs. 11,
12) and Plaintiff's Opposition thereto (Doc. 14).  After
consideration of these pleadings, and for the reasons set out
below, it is recommended that Defendants' Motion for Summary
Judgment be granted and that Plaintiff's action be dismissed with
prejudice.

I.  FACTS

      From its review of the record, the Court summarizes the
parties' allegations which are material to the issues addressed
in this Report and Recommendation.  On or about June 11, 2009,
while incarcerated at Fountain Correctional Facility
("Fountain"), Plaintiff claims that he was handcuffed and beaten
by Defendant Lieutenant Gwendolyn Givens and Correctional Officer

Harvey Knight, following a "scuffle" in the chow hall.  (Doc. 1 at 4).  Plaintiff alleges that Officers McCorvey, Sellers, and Williams also participated in escorting him to segregation, instead of the Health Care Unit for an examination.[1]  (<u>Id.</u> at 6).

According to Plaintiff, there was a "scuffle in the chow hall," and he was handcuffed and beaten by Defendants Givens and Knight.  (<u>Id.</u> at 4).  Plaintiff claims that Officer Knight was "trash talking" to him, warning "wait til we get you into seg." At the door, Plaintiff alleges that Officer Knight "kept trying to push [his] head in the wall."  (<u>Id.</u>).  Plaintiff complains that he was taken to segregation instead of the Health Care Unit for an examination.  (<u>Id.</u>).  Once in segregation, Plaintiff contends that he was beaten by Defendants Givens and Knight, and that when he fell to the ground, Defendant Knight continued kicking him in the chest.  (<u>Id.</u>).  Plaintiff claims that

---

[1]Although somewhat unclear, it appears that the only two Defendants in this action are Lieutenant Givens and Correctional Officer Knight.  (Doc. 1).  Plaintiff actually only lists Lieutenant Givens as a Defendant, however, he references actions by Officer Knight in his factual allegations.  While Plaintiff does state the name "Jerry Ferrell" on the style of his Complaint, he asserts no claims against Jerry Ferrell in the Complaint.  Plaintiff also identifies Correctional Officers Timothy McCorvey, James Sellers, and someone by the name of Williams as being involved with his transport to segregation. (Doc. 1 at 6).  The Court does not consider Jerry Ferrell, Officer Timothy McCorvey, Officer James Sellers, or "Williams" as Defendants, as there have been no actual claims asserted against these individuals.  Furthermore, this issue is moot because even if these individuals had been included as Defendants, Plaintiff has failed to show a constitutional violation regarding this incident.

Defendants "nearly beat [him] to death."  (Id. at 5).

On July 21, 2009, Plaintiff filed the present § 1983 action, asserting an Eighth Amendment claim against Defendants Correctional Lieutenant Gwendolyn Givens and Correctional Officer Harvey Knight.  (Doc. 1).  In his Complaint, Plaintiff claims that Defendants Givens and Knight violated his Eighth Amendment rights by using excessive force against him during the altercation in Fountain's dining hall on June 11, 2009.  (Id. at 4-6).  Plaintiff seeks monetary damages in the amount of $75,000, as well as an order lowering Lieutenant Givens' rank and suspending Officers McCorvey, Knight, Sellers and Williams.  (Id. at 7).

In their Answer filed on February 8, 2010, Defendants Givens and Knight deny Plaintiff's allegations and assert the defenses of qualified and sovereign immunity.  (Doc. 11).  Defendant Gwendolyn Givens avers that while she was assisting with the inmate population evening meal at Fountain on June 11, 2009, she observed Plaintiff wrapping several corndogs in tissue paper. (Doc. 12, Ex. 1 at 2).  After issuing several unheeded direct orders to Plaintiff to either eat the corndogs or throw them away, Defendant Givens attempted to remove the corndogs from the table.  (Id.).  As Defendant Givens was attempting to remove the corndogs from the table, Plaintiff grabbed Officer Givens' wrist. (Id.).  Officer Givens ordered Plaintiff to release her wrist,

but instead Plaintiff rose from the table and "forcefully" pushed Officer Givens in the chest using both of his hands. (Id.). Officer Givens fell to the floor, requiring assistance to stand up again.

At Officer Givens' request, an inmate alerted Correctional Officer Timothy McCorvey, that she needed assistance in the dining hall. (Id.). Subsequently, Correctional Officers McCorvey, Sellers, and Knight reported to the dining hall and helped to restrain Plaintiff from further assault on Officer Gwendolyn Givens. (Id.). Despite Plaintiff's continued resistance, handcuffs were applied, and Plaintiff was escorted by Officers Knight, Sellers, and Lieutenant Givens to the Health Care Unit for medical treatment. (Id.).

Prison records reflect that Plaintiff was examined in the Health Care Unit on June 11, 2009, at approximately 4:50 p.m., just moments following the incident. (Doc. 12, Ex. 3 at 10). Plaintiff reported to the medical staff that he "was sitting at the table and an incident happened and they contained me." (Id.). It was noted that Plaintiff had a one half inch superficial abrasion on his right shoulder, a small scratch above his lip, and a hematoma, and superficial laceration above his right eye. (Id.). Plaintiff denied any loss of consciousness. (Id.). Plaintiff's medical treatment consisted of cleansing the wounds with water and applying a dressing. Plaintiff was advised

4

to apply an ice pack to his hematoma that night, and released for placement in segregation.  (Id.).

A body chart documentation was also prepared for Defendant Lieutenant Gwendolyn Givens, who advised the health care staff of the attack by Plaintiff.  It was noted that Defendant Givens had sustained an abrasion on her right elbow, and she was released back to work.  (Id. at 11).  Body charts were also prepared for Officer James Sellers, Officer Harvey Knight, and Officer Timothy McCorvey, with no injuries being noted for these officers.  (Id. at 12-14).

An incident report was prepared by Defendant Correctional Lieutenant Givens, detailing the incident on June 11, 2009, occurring at 4:50 p.m. in Fountain's dining hall.  (Id. at 2-6).  The incident report reflects Defendant Givens' account of Plaintiff's grabbing her hand and then pushing her to the ground, noting also that witnesses were Correctional Officers McCorvey, Knight and Sellers.  (Id.).

According to the report, the incident occurred at 4:50 p.m., and Plaintiff was escorted to the Health Care Unit approximately one minute later.  (Id. at 3).  The report, consistent with Health Care Unit records, reflects that Lieutenant Givens was medically assessed at approximately 5 p.m., followed by Officer Sellers at 5:05 p.m., Officer Knight at 5:10 p.m., and Officer McCorvey at 5:15 p.m.  (Id.).  Also a part of the incident report

5

were individual statements by Officers McCorvey, Knight and
Sellers detailing their account of the altercation. (<u>Id.</u>). The
report additionally contained a statement by Captain Richard
Hetrick, who investigated the incident, noting conversations with
two different inmates who witnessed the altercation. (<u>Id.</u> at 6).
Each inmate, separately, advised Captain Hetrick that Plaintiff
had hit Lieutenant Givens and knocked her to the floor. (<u>Id.</u>).
Inmate Miller also advised Captain Hetrick that he had assisted
Lieutenant Givens to her feet following the attack. (<u>Id.</u>).

As a result of this incident, Plaintiff was charged with
Assault on a Person Associated with the ALDOC, Insubordination,
and Failure to Obey a Direct Order. (<u>Id.</u> at 15-32). Plaintiff
was found guilty of each of these three violations. (<u>Id.</u>).

On February 11, 2010, the Court ordered that Defendants'
Answer and Special Report be treated as a Motion for Summary
Judgment. (Doc. 13). On February 23, 2010, Plaintiff filed a
response in opposition to Defendants' motion, reasserting his
Eighth Amendment excessive force claim against Defendants.[2] (Doc.

---

[2]In his opposition to Defendants' Motion for Summary
Judgment, Plaintiff also states that Warden Jerry Ferrell "lacked
proper control over Lt. Givens, Officer Knight, Officer Sellers,
Officer McCorvey due (sic) to the fact that they assaulted the
plaintiff while in handcuff restraints." (Doc. 14 at 1-2). To
the extent that Plaintiff is attempting to assert a claim against
Warden Ferrell, Officer Knight, and Officer McCorvey, the Court
rejects these allegations as the time for amending and adding
claims to Plaintiff's Complaint has passed. That being said,
Plaintiff's claims would fail anyway as to these individuals, as
there has been no constitutional violation shown in this action

(Doc. 14).

## II. SUMMARY JUDGMENT STANDARD

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles.  The <u>Federal Rules of Civil Procedure</u> grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment.  "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . .'" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) (quoting <u>Fed. R. Civ. P.</u> 56(c)).

The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party.  <u>Barfield v. Brierton</u>, 883 F.2d 923, 934 (11th Cir. 1989).  However, the Court is only to "make all *reasonable* inferences in favor of the party opposing summary judgment...not to make all *possible* inferences in the nonmoving party's favor." <u>Torjagbo v. United States</u>, 285 Fed. Appx. 615, 619 (11th Cir. 2008) (emphasis in original).

Rule 56(e) states that:

> an adverse party [to a motion for summary judgment] may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts

7

> showing that there is a genuine issue for
> trial.  If the adverse party does not so
> respond, summary judgment, if appropriate,
> shall be entered against the adverse party.

Fed. R. Civ. P. 56(e); see also Celotex Corp., 477 U.S. at

325-27.

     "[T]here is no issue for trial unless there is sufficient

evidence favoring the nonmoving party for a jury to return a

verdict for that party. . . .  If the evidence is merely

colorable, . . . or is not significantly probative, . . . summary

judgment may be granted."  Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 249-50 (1986) (internal citations omitted).  "Summary

judgment is mandated where a party 'fails to make a showing

sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden

of proof at trial.'"  Custom Mfg. & Eng'g, Inc. v. Midway Servs.,

Inc., 508 F.3d 641, 647 (11th Cir. 2007) (citations omitted).

     In civil actions filed by inmates, although drawing "all

justifiable inferences in [the inmate's] favor," federal courts

> must distinguish between evidence of disputed
> facts and disputed matters of professional
> judgment.  In respect to the latter, our
> inferences must accord deference to the views
> of prison authorities.  Unless a prisoner can
> point to sufficient evidence regarding such
> issues of judgment to allow him to prevail on
> the merits, he cannot prevail at the summary
> judgment stage.

Beard v. Banks, 548 U.S. 521, 529-30 (2006) (internal citation

omitted).  "'Where the record taken as a whole could not lead a

8

rational trier of fact to find for the nonmoving party, there is "no genuine issue for trial."'" Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

## III. DISCUSSION

As discussed above, Plaintiff seeks redress pursuant to 42 U.S.C. § 1983 for an alleged constitutional deprivation arising from a physical altercation between himself and Lieutenant Givens and Officer Knight that occurred on June 11, 2009, in Fountain's dining hall. (Doc. 1). Plaintiff claims that Lieutenant Givens and Correctional Officer Knight used excessive force in restraining him with handcuffs, and "nearly beat[ing] [him] to death." (Doc. 1 at 4). Defendants deny the use of excessive force and assert the defenses of sovereign and qualified immunity.[3]

---

[3]Plaintiff does not state whether he is asserting his Eighth Amendment claim against Lieutenant Givens and Correctional Officer Knight in their official or individual capacities, or both. As state officers, Defendants are entitled to absolute immunity from suit for damages in their official capacity. See Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment).

However, in Skrtich v. Thornton, 280 F.3d 1295, 1301 (11th Cir. 2002), the Eleventh Circuit held that the defense of qualified immunity is unavailable in a case such as this, stating: "a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution. . . ." See also Johnson v. Breeden, 280 F.3d 1308, 1321 (11th Cir. 2002) ("[I]t is clearly established that all

9

Section 1983 provides in pertinent part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983 (1994).

In addressing Plaintiff's claim brought under §1983, the Court begins its analysis "by identifying the specific constitutional right allegedly infringed...." <u>Graham v. Connor</u>, 490 U.S. 386, 394 (1989). Plaintiff claims that he has suffered a violation of his Eighth Amendment right to be protected from cruel and unusual punishment.

The Eighth Amendment, which attaches "after conviction and sentence," protects incarcerated prisoners, like Plaintiff, from punishment that is "cruel and unusual." <u>Graham</u>, 490 U.S. at 392 n.6, 394. Specifically, the Eighth Amendment "prohibits the unnecessary and wanton infliction of pain, . . . the infliction of pain totally without penological justification. . . , [and]

---

infliction of excessive force on a prisoner sadistically and maliciously for the very purpose of causing harm and which does cause harm violates the Cruel and Unusual Punishment Clause. So, where this type of constitutional violation is established there is no room for qualified immunity."). The only question, then, is whether Plaintiff has alleged facts sufficient to survive a motion for summary judgment. "If he has done so, that is the end of the inquiry." <u>Skrtich</u>, 280 F.3d at 1301.

the infliction of punishment grossly disproportionate to the severity of the offense." Ort v. White, 813 F.2d 318, 321 (11th Cir. 1987) (citing Rhodes v. Chapman, 452 U.S. 337, 346 (1981)).

In order to establish an Eighth Amendment claim against Defendants, Plaintiff must prove both an objective and subjective component. That is, Plaintiff must show that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation and that Defendants "act[ed] with a sufficiently culpable state of mind," *i.e.*, that they acted "maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7-8 (1992).

In Hudson, the Supreme Court recognized that, whenever guards use force to keep order, they "must balance the need 'to maintain or restore discipline' through force against the risk of injury to inmates." Hudson, 503 U.S. at 6 (quoting Whitley v. Albers, 475 U.S. 312, 321-22 (1986)). Thus, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. In making this determination, the Court considers the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived, any efforts made to temper the severity of a forceful response, and the extent of injury suffered. Hudson, 503 U.S. at 7 (citing Whitley, 475 U.S. at 321).

11

Considering the evidence in the light most favorable to Plaintiff, the question is whether a jury could reasonably conclude that Defendants violated Plaintiff's rights under the Eighth Amendment.  Under the circumstances of this case, Plaintiff's allegations fail to establish a constitutional violation.

It is undisputed that Plaintiff physically attacked Lieutenant Givens in the dining hall of Fountain, knocking her to the ground in the presence of approximately 200 inmates.  (Doc. 12, Exs. 1, 2, 3, 4).  At Lieutenant Givens' request, fellow inmates called another correctional officer for help, and assisted Defendant Givens to her feet.  (Doc. 12, Ex. 1 at 1-2, Ex. 3 at 6).  Plaintiff complains that he was "jumped" in the "chow hall" by Defendants Givens and Knight, as they were attempting to restrain Plaintiff.  (Doc. 1 at 4-6). Additionally, contrary to the numerous detailed records maintained in Plaintiff's inmate file, Plaintiff complains that he was taken to segregation, rather than being taken to the Health Care Unit for a body chart.  (Doc. 1 at 4-6).  Although he makes no specific allegation of physical injury in his Complaint, months later, in his Opposition to Defendants' Motion for Summary Judgment, Plaintiff alleges that he suffered head and heel injuries.  (Doc. 14).

In assessing the factors enumerated above, specifically, the threat reasonably perceived by Defendants, the need for the use of force, and Defendants' motive in using force, it is evident that the disruptive behavior of Plaintiff created a chaotic and dangerous situation which undermined the authority and control of Lieutenant Givens, as well as the other correctional officers in the area.  The record reflects, with no objection from Plaintiff, that Plaintiff openly disobeyed an order from Lieutenant Givens and then forcefully hit her, knocking her to the floor.  (Doc. 12, Ex. 1, Ex. 3).  This incident occurred in Fountain's dining hall, in the presence of approximately 200 inmates.  (Id. at 1). Clearly, this altercation caused by Plaintiff created a dangerous situation for not only Lieutenant Givens, but also for the other inmates, correctional officers, and even Plaintiff himself. There can be no question as to the need for force against Plaintiff, and further, there has been no indication that Defendants' motive in restraining Plaintiff was anything other than a good faith effort to end Plaintiff's disruptive and violent outburst and restore discipline and control.

With respect to the amount of force used by Defendants, the Court is mindful that, while an inmate must be protected from the "'unnecessary and wanton infliction of pain' by prison officials," prison officials must maintain order and discipline "in an often dangerous and unruly environment."  Ort v. White, 813 F.2d 318, 321-22 (11th Cir. 1987).  Thus, prison officials

13

must be extended deference "in acting to insure the proper administration, safety and security of a penal institution." <u>Id.</u> at 322.

"'The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense.'" <u>Id.</u> at 323 (citations omitted).

With these considerations in mind, the Court finds that the force used by Defendants in restraining Plaintiff was applied for the purpose of restoring order and was not, in any event, excessive.  Defendants' restraint of Plaintiff ended a threatening situation, which notably, was a danger not only to Lieutenant Givens, but also to the other correctional officers, inmates, and Plaintiff himself.

Moreover, following his restraint, the record clearly reflects that Plaintiff was escorted straight to the Health Care Unit, where he, as well as Defendant Givens and the other correctional officers involved, were each examined, as documented by the body charts.  (Doc. 12, Ex. 3 at 10-13).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts

for purposes of ruling on a motion for summary judgment." <u>Scott</u>
<u>v. Harris</u>, 550 U.S. 372, 380 (2007).   The court may disregard
"visible fiction" where the opposing party's "version of events
is so utterly discredited by the record that no reasonable jury
could have believed him." <u>Id.</u> at 380-381.

Considering the final factor, the extent of injury suffered,
the Court is mindful that inherent in the protection afforded by
the Eighth Amendment is the principle that "not 'every malevolent
touch by a prison guard gives rise to a federal cause of
action.'" <u>Clark v. Johnson</u>, 2000 WL 1568337, *12 (S.D. Ala. 2000)
(unpublished)[4] (quoting <u>Hudson</u>, 503 U.S. at 9-10).   Indeed,
"'[n]ot every push or shove, even if it may later seem
unnecessary in the peace of a judge's chambers, violates a
prisoner's constitutional rights.'" <u>Hudson</u>, 503 U.S. at 9
(citations omitted).

The objective component of an Eighth Amendment excessive
force claim "necessarily excludes from constitutional recognition
*de minimis* uses of physical force, provided that the use of force
is not of a sort 'repugnant to the conscience of mankind.'"
<u>Hudson</u>, 503 U.S. at 9-10 (quoting <u>Whitley v. Albers</u>, 475 U.S.
312, 327 (1986)).

---

[4]"Pursuant to Eleventh Circuit Rule 36-2, unpublished
opinions are not considered binding precedent, but may be cited
as persuasive authority." <u>Lanier Constr., Inc. v. Carbone Props.</u>
<u>of Mobile, LLC</u>, 253 Fed. Appx. 861, 865, 2007 WL 3307384, *3
(11th Cir. 2007).

While the Supreme Court in Hudson did not define "*de minimis* use of force*," it did hold that neither "serious" nor "significant" injury is required to satisfy the objective component of an Eighth Amendment claim, nor is any arbitrary quantum of injury an absolute requirement of an excessive force claim, apparently out of concerns that certain forms of torture are capable of inflicting extreme pain without leaving any mark or tangible injury.  Id. at 9. ("Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.").

Recently, the Supreme Court noted that "injury and force...are only imperfectly correlated, and it is the latter that ultimately counts.  An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins v. Gaddy, __ U.S. __, 130 S. Ct. 1175, 1178-79, __ L. Ed. 2d __, 2010 WL 596513, *3 (February 22, 2010).

"This is not to say that the 'absence of serious injury' is irrelevant to the Eighth Amendment inquiry." Id. at 1178 (citing Hudson, 503 U.S. at 7).  "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." Id. (quoting Whitley, 475 U.S. at 321).

16

In the present action, there are no allegations of torture designed to inflict extreme pain without leaving tangible injury or conduct that otherwise is so egregious that one could reasonably call it repugnant to the conscience of mankind. Therefore, if Plaintiff suffered only *de minimis* injuries, that would be an important factor in determining whether more than *de minimis* force was used.

Plaintiff's health record indicates that he suffered a superficial abrasion, a small scratch above his lip, and a hematoma and superficial laceration above his right eye. (Doc. 12, Ex. 3 at 10). Treatment consisted of cleansing with water, and applying dressings. (Id.). Pain medication was not necessary, nor was it requested by Plaintiff. Plaintiff was released for placement in segregation within minutes of his medical examination. (Id.). In his Complaint, Plaintiff makes no allegations of any significant, lasting ill effects from the altercation, nor does he claim that he ever requested additional medical treatment for his minor injuries. (Doc. 1). In his opposition to Defendants' Motion for Summary Judgment, Plaintiff makes a conclusory, self-serving allegation that he "sustained a head injury" and that he "must have surgery on his Achilles heel" as a result of the incident. (Doc. 14 at 2).

Other than the one conclusory, and notably, delayed allegation by Plaintiff regarding his "head injury" and "Achilles

17

heel," the record in this action is devoid of evidence of lasting injury to Plaintiff resulting from this altercation.  Plaintiff did not even mention these alleged injuries until six months after filing his Complaint, following Defendants' argument to the Court that Plaintiff had not suffered any lasting injury.  (Doc. 12).  Further, the Court finds significant the fact that Plaintiff never complained of any injury to his feet or ankles at the Health Care Unit immediately following the altercation, nor was such an injury noted by the medical staff.  Again, Plaintiff was released after having his small wounds washed with water and dressed.  (Doc. 12, Ex. 3 at 10).

While the Court is aware that, even in the absence of serious or significant injury, a plaintiff can establish a constitutional claim based on excessive force, Defendant Givens' and Defendant Knight's, as well as the other involved officers' actions in this case, as described by Plaintiff, do not involve diabolic or inhuman torture designed to inflict extreme pain without leaving any mark or tangible injury, nor are they otherwise so egregious that one could reasonably call them repugnant to the conscience of mankind.[5]

_____

[5]In determining whether the extent of Plaintiff's alleged injuries indicates the use of excessive force, the Court finds instructive the types of injuries which have been held to be insufficient to support excessive force claims under the Eighth Amendment, such as: a scratch on inmate's side from a correctional officer pushing, shoving, and hitting him in an effort to force inmate to comply with an order to pick up his hoe and get back to work, Walker v. Thames, 2001 WL 394911, * 6 (S.D.

Assuming, as Plaintiff alleges, that he was "beaten" while being restrained following his attack on Lieutenant Givens, his injuries were *de minimis* and simply do not support his claim that he was subjected to anything other than *de minimis* force, which in this instance, considering all other factors, is insufficient to establish a constitutional violation under the Eighth Amendment.  In light of Plaintiff's undisputed attack on

_____

Ala. 2001) (unpublished); scratches on plaintiff's elbow, bump and one-half inch skin tear behind the ear, abrasion on the shoulder, and jaw pain from correctional officer pushing plaintiff into a glass window while taking him to a holding cell, Lanier v. Fralick, 2000 WL 1844679, *1-2, 5-6 (S.D. Ala. 2000) (unpublished); blow to the forehead with a baton, resulting in no bruising or swelling, Clark, 2000 WL 1568337, *18-19; a sore, bruised ear lasting three days, Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997); bruises on a prisoner's back from being shoved into a door frame, DeWalt v. Carter, 224 F.3d 607, 620 (7th Cir. 2000); lacerations, bruises, cuts, and swelling as a result of a guard hitting plaintiff's hand with a plastic box when plaintiff reached through a trap in the door of his cell, White v. Matti, 58 Fed. Appx. 636, 638 (7th Cir. 2002) (unpublished); pain, swelling, and bruising from a guard closing a cuffport door on a prisoner's hand, Outlaw v. Newkirk, 259 F.3d 833, 839-40 (7th Cir. 2001); a bruised shoulder from being shoved into a wall, Markiewicz v. Washington, 175 F.3d 1020, *1 (7th Cir. 1999) (unpublished); a 1.5 inch scratch on the back of the hand from handcuffs, Schoka v. Swinney, 53 F.3d 340, *1 (9th Cir. 1995) (unpublished); and daily headaches, not requiring treatment, from being hit with a water bucket, Lunsford v. Bennett, 17 F.3d 1574, 1582 (7th Cir. 1994).

On the other hand, the following types of injuries have been held to be sufficient to support excessive force claims: injury to an inmate's back from guards snapping inmate's head back with a towel, slapping inmate twice in the face, and kicking inmate, Harris v. Chapman, 97 F.3d 499, 506 (11th Cir. 1996); cuts, scrapes and contusions to the face, head, and body from a group beating, Gomez v. Chandler, 163 F.3d 921, 924-25 (5th Cir. 1999); a broken finger, Escobar v. Zavaras, 149 F.3d 1190, *3 (10th Cir. 1998) (unpublished); and permanent scarring and numbness from handcuffs, Davidson v. Flynn, 32 F.3d 27, 29 n.1 (2d Cir. 1994).

Lieutenant Givens, his injuries are certainly consistent with the necessary use of restrained force by Defendants, not force "grossly disproportionate to the severity of the offense."  Ort, 813 F.2d at 321.

If a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial," Rule 56(c) mandates that summary judgment be entered against the nonmovant.  Celotex Corp., 477 U.S. at 322.  "No material issues can be in dispute where the plaintiff's evidence fails to establish a constitutional violation."  Bennett v. Parker, 898 F.2d 1530, 1534 (11th Cir. 1990).  Therefore, since no constitutional violation has been established, Defendants' Motion for Summary Judgment is due to be granted.

IV.   CONCLUSION

Based on the foregoing, it is recommended that the Motion for Summary Judgment of Defendants Lieutenant Gwendolyn Givens and Correctional Officer Harvey Knight be granted (Docs. 11, 12), that Plaintiff's action be dismissed with prejudice, and that judgment be entered in favor of Defendants on all claims.

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.   **Objection**.  Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of

this document, file specific written objections with the clerk of court.   Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. *See* 28 U.S.C. § 636(b)(1)(c); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).   The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten[6] days after being served with a copy of the recommendation, unless a different time is established by order.   The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.   Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[6] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"   Fed. R. Civ. P. 72(b)(2).

DONE this 8th day of April, 2010.

                       s/BERT W. MILLING, JR.
                       UNITED STATES MAGISTRATE JUDGE